| | | |
|---|---|---|
| BJ/BB | Grade, ¾'' thick, 60'' x 60'' | |
| BJ/BB | " " " 60'' x 48'' | |
| BJ/WG | " ³⁄₁₆'' " 60'' x 60'' | |
| BJ/WG | " " " 48'' x 60'' | |

| R59/5250 | 4943 | 8744 | 10/17/57 |
|---|---|---|---|

Shipper: Kaukas OY., birch plywood as follows:

A/BJ  grade, ³⁄₁₆'' thick  62'' x 62''
61'' x 61''
60'' x 60''

(Reap. Dec. 9673)

Brauner & Co. v. United States

Entry No. 898363.

(Decided April 19, 1960)

*John D. Rode* for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the defendant.

LAWRENCE, Judge: This appeal for a reappraisement was filed pursuant to the provisions of section 501 of the Tariff Act of 1930, as amended (19 U.S.C. § 1501).

The merchandise under consideration consists of parts of a so-called Lurgi acid distillation plant which was imported by E. F. Drew & Co., Inc., of New York, in a knockeddown condition. Brauner & Co. acted as customhouse broker.

The importation was invoiced at a total of $46,900. Entry was made at $46,900, plus 2½ per centum export reimbursement, amounting to $1,172.50, to which was added $1,236 to cover a price rise in the cost of labor and materials, less consular fee of $2.50, making a total entered value of $49,306.

Appraisement was made on the basis of cost of production, as defined in section 402(f) of said act (19 U.S.C. § 1402(f)), at $57,401, packed.

Plaintiff claims that the appraiser improperly included in his finding of value the sum of $11,000, referred to in the record as "lump-sum license and engineering fee," but claimed to be in fact a payment for services rendered for engineering advice and "know-how."

The record evidence consists of the testimony of one witness who was called by the plaintiff, together with certain documentary exhibits and an oral stipulation, in which it was agreed in substance that if the court finds that the sum of $11,000, above referred to, is part of the dutiable value, then the appraiser's value is correct; and if the court finds said sum is not properly a part of the dutiable value, then the appraised value should be reduced accordingly.

Plaintiff's witness, Oscar Ackelsburg, is employed by the actual importing company which is engaged in the manufacture of fatty acids, fatty acid derivatives, and edible oils, at its Boonton, N.J., plant. He is the manager in charge of the .production facilities, scheduling, and "inedible operations of the factory." He described the subject merchandise as consisting of a number of pieces of chemical equipment for the purpose of distilling fatty acids under high vacuum.

The imported equipment formed a relatively small part of a larger unit in which it was installed at the company's plant, the total cost of which was approximately $450,000. The operation of the plant was

of such a complicated nature that it required technological knowledge and skill in installing the equipment and to efficiently and properly utilize it. Inasmuch as the Drew Co. had never previously used such a system, it was agreed between Drew and Lurgi, the manufacturer and shipper, at the time of purchase, that to the price to be paid for the equipment, Drew would pay Lurgi an additional $11,000. In consideration of this payment, Lurgi undertook to make its engineers and technicians available to Drew for inspection, advice and instructions on how to install and utilize the imported equipment. Drew was at liberty to call on Lurgi for advice and assistance in running the plant, and his personnel went to Germany and spent several days there discussing with Lurgi the projected installation. A representative of the Lurgi Co. came to this country and spent several days at Drew's plant, together with two or three other engineers from Lurgi.

It was Ackelsburg's testimony that, if Drew had been content to have installed and utilized the imported equipment on his own responsibility, it could have been purchased without the payment of the $11,000 for technical advice and information from Lurgi. As stated by Ackelsburg:

> * * * we did it merely as a form of insurance to guaranty that if we spent the large sum of money installing the plant and we ran into trouble we could call upon them for help.

The witness testified further that the actual construction and installation of the plant required about 8 months, the completed unit occupying an area of approximately 30 by 40 feet, together with a distillation tower, about 118 feet high.

The foregoing fairly summarizes the substance of Ackelsburg's testimony which is fortified by the testimony of Karl Sondermann, contained in an affidavit received in evidence as exhibit 1. It appears that Sondermann had been in the employ of Lurgi for 30 years and occupied the position of chief engineer. He was familiar with all the details of the transaction between Lurgi and Drew pertaining to the merchandise in controversy; that, separate and apart from the purchase of the equipment, Drew agreed to pay Lurgi the sum of $11,000 as a "lump sum license and engineering fee," which formed no part of the purchase price of said equipment but "was compensation for services rendered for engineering advice and know-how necessary and desirable for the proper and efficient use of said equipment by the purchaser." Sondermann also stated that the operation and use of said equipment was extremely difficult and complex which required "knowledge and skill and that many hours of consultation and instruction were furnished by Lurgi to the engineers and technicians of E. F. Drew & Co. Inc." He stated that the license fee

referred to in Drew's order for the purchase of the equipment "represented the license fee paid for the acquisition of the process and method of operation of said plant and was not for the right of E. F. Drew & Co. Inc. to use said equipment; that E. F. Drew & Co. Inc. was free to buy said equipment for the purchase price noted without also obtaining any license or engineering advice or know-how * * *"; that said payment of $11,000 formed no part of the purchase price of the plant or equipment exported to the United States, nor did it enter into or represent any part of the cost of materials and fabrication, general expenses, or profit in the production of said equipment, but did in fact represent payment for services and advice as hereinbefore indicated.

The Government, defendant, introduced certain correspondence between the appraiser and the broker who made the entry, which was received in evidence as collective exhibit A. It appears that the appraiser wrote to the importer requesting a copy of the contract covering the purchase of the imported merchandise and for an explanation of the charge of $11,000 for "lump-sum License and Engineering Fee." Not receiving satisfactory information from the importer, the appraiser returned the value for the merchandise, including the $11,000. In this connection, it should be noted that the man in Drew's employ, who made the arrangements for the purchase of the subject merchandise, drew up the purchase orders, and who went to Germany in connection with the transaction is deceased.

In its brief, the Government stresses the point that plaintiff failed to establish a breakdown of the charge of $11,000. However, in view of the positive statements of Ackelsburg and Sondermann, which are not controverted, that the payment of $11,000 was for the purpose of acquiring the technical knowledge and skill of the Lurgi engineers, who came to America to assist in installing and putting the equipment into operation, and the statement of Sondermann that the so-called "license fee" was paid for the acquisition of the process and method of operation of said plant and was not for the right of E. F. Drew & Co., Inc., to use said equipment, the court is of the opinion that the amount of $11,000 was not a part of the purchase price. As stated by Sondermann, the payment of $11,000 did not enter into the purchase price of the equipment exported to the United States; neither did it enter into or represent any part of the cost of materials, fabrication, general expenses, and so forth in the production of said equipment, but was payment for services and advice. Regardless of the term used to describe the lump sum of $11,000, it remains clear, from the testimony of Ackelsburg and Sondermann, that it was for the definite purpose

of securing technological and engineering advice, instruction, and information so important to the proper installation and efficient operation of a very complicated and expensive distillation plant.

Plaintiff, in its brief, sets forth what it deems to be settled law that payments necessary to obtain possession of or the right to use merchandise are considered part of the purchase price or cost of production of said merchandise (*International Forwarding Co.* v. *United States*, 17 C.C.P.A. (Customs) 86, T.D. 43377; *United States* v. *Vandegrift & Co.*, 26 C.C.P.A. (Customs) 360, 364, C.A.D. 42) ; but that it is equally well established that license fees or royalty payments for the exclusive right to purchase machines for export to the United States (*United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 39 C.C.P.A. (Customs) 86, C.A.D. 468; *Pacific Customs Brokerage Co.* v. *United States*, 30 Cust. Ct. 547, Reap. Dec. 8218; *United States* v. *Alfred Dunhill of London, Inc.*, 32 C.C.P.A. (Customs) 187, C.A.D. 305), or for the right to use a patented process (*United States* v. *The Tide Water Oil Co.*, 19 C.C.P.A. (Customs) 392, 399, 400, T.D. 45554), or for services of an engineer to improve the efficiency of a machine (*United States* v. *Rohner Gehrig & Co., Inc.*, 4 Cust. Ct. 864, Reap. Dec. 4923; *United States* v. *Rohner Gehrig & Co., Inc.*, 9 Cust. Ct. 591, Reap. Dec. 5724) are not part of the value or cost of production of the merchandise there under consideration. That argument applies here with apt relevance.

We have examined the other authorities cited in the briefs of adversary counsel, but find it unnecessary to review them here as it would not affect the conclusion reached by the court.

Upon the record and applicable judicial authorities, the court makes the following findings of fact:

1. The importation in controversy consists of parts of a Lurgi fatty acid distillation plant exported from West Germany.

2. That, in addition to the cost of production of said parts, the sum of $11,000 was paid by the importer to the exporter for technological and engineering advice and instruction as to the installation and efficient utilization of the plant.

3. That the sum of $11,000 formed no part of the purchase price or cost of production of the imported merchandise.

As conclusions of law, the court holds—

1. That the cost of production, as defined in section 402(f) of the Tariff Act of 1930 (19 U.S.C. §1402(f)), provides the proper basis for appraisement herein.

2. That the cost of production, as defined in said section 402(f), is the appraised value, less $11,000.

Judgment will issue accordingly.