(Reap. Dec. 10768)

ERB & GRAY SCIENTIFIC, INC. *v.* UNITED STATES

Entry No. 04982.

(Decided June 4, 1964)

*Glad & Tuttle* (*Edward N. Glad* of counsel) ; *Schultheis, Laybourne & Dowds* (*Everett B. Laybourne* of counsel), associate counsel ; for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*James F. O'Hara* and *Charles P. Deem,* trial attorneys), for the defendant.

WILSON, Judge: The merchandise concerned in this appeal to reappraisement consists of one set, Hitachi Electronic Microscope, Model HU-11, exported from Japan on or about November 25, 1961, by Nissei Sangyo Co., Ltd., Tokyo, Japan. The microscope was entered at the value of $13,500, net, packed. The merchandise was appraised at $17,000, net, packed, on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. Since the parties have stipulated that export value, as defined in section 402(b), *supra,* is the proper basis for appraisement, the only issue presented for determination concerns the sum of $3,500 added to the entered value by the appraiser. It was stipulated between the parties that should the court hold that the sum of $3,500 paid to Nissei Sangyo was properly included in the export value, then, the appraised value is correct; but, on the contrary, if the court holds that said $3,500 was improperly included in the export value, then, the entered value should be sustained. (R. 3–4.)

Section 402(b) of the Tariff Act of 1930, as amended, *supra,* reads as follows:

EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise

is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

. The only witness called in this case was Carl H. McBain, vice president of Perkin-Elmer Corp., Bureau of Marketing, Instrument Division, formerly president of the plaintiff, Erb & Gray Scientific, Inc., which merged with Perkin-Elmer Corp. subsequent to the importation here involved. The remainder of the testimony consists of a number of documents. The official papers in the case were received in evidence, without being marked. Plaintiff's collective exhibit 1 is an affidavit by one T. Ikeda, and plaintiff's exhibit 2 is an order confirmation received by the plaintiff from Nissei Sangyo in Tokyo in July 1961, confirming an order from the plaintiff company for a microscope. Defendant's collective exhibits A through D consist of the following documents: A, a two-page letter; B, a customs agent's report; C, several documents fastened together; and D, another set of documents. Defendant's collective exhibit E consists of two pages which were marked for identification but not offered in evidence.

The only issue here involved, i.e., whether the sum of $3,500 was properly included as part of the appraised value, can really be resolved by an analysis of the facts. It appears to the court that the preponderance of the evidence clearly indicates that this item formed no part of the export value of the merchandise in question, but was paid by the plaintiff to the exporter or its subsidiary company in New York for the installation and servicing of the microscope after it was received by the plaintiff company in the United States and sold to one of its customers. The testimony of Mr. McBain, who was familiar with all the dealings between the plaintiff company and the manufacturer of the microscope in question, clearly indicates that when the plaintiff first began the importation of the type of microscope in question as the HU–10, the export sale price was $12,500, which was later increased to $13,500, the price paid for the HU–11 which is similar to HU–10, as improved prior to its replacement by the HU–11. In the beginning, maintenance and travel expenses were paid to certain trained personnel of the manufacturer for services rendered in the installation and servicing of the imported electronic microscopes. The testimony leaves no doubt that the instrument in question is a highly technical complex mechanism, requiring the skill of specially trained men for its installation and maintenance, and that such workmen were available only by obtaining them through the manufacturer of the merchandise in question. Neither is there any question that, in the beginning of the relations between the manufacturer and the plaintiff,

the payments to the workmen were separate in every way from the contract price paid for the microscopes. According to Mr. McBain's testimony, his company was late in making certain payments for the wages and other expenses of the skilled workmen, and finally the manufacturer requested that the payments for installation and service charges be paid at the same time the purchase price of the microscopes was remitted. Even after that demand, it is not clear that the manufacturer would not have continued to ship the microscopes without the prepayment of the service charges, since some of the orders, according to Mr. McBain, "a great majority of them," were confirmed on the basis of $13,500, the export value of one machine, plus the payment of $3,500 for service charges separately stated in the order and confirmation. The fact that, in the case of the importation now before us, the true sales price of the microscope, $13,500, and the service charge of $3,500 were added together and set forth in the one figure of $17,000 is not conclusive. If all the documentary testimony is taken together, there are some slight conflicts, but the real import of it is that, regardless of how the $3,500 item was set forth, whether separately or as part of the total of $17,000, it was not intended as part of the purchase price. Accordingly, the item in dispute formed no part of the value of the merchandise for appraisement purposes. See, in this connection, *Brauner & Co.* v. *United States*, 44 Cust. Ct. 661, Reap. Dec. 9673. Throughout all the testimony, it clearly appears that there was a separation between the real sales price of the microscopes and the sum intended for payment to technicians to install and service the microscopes after they were received by the plaintiff in the United States and sold to its customers. The testimony further indicates that the responsibility for backing up the guarantee to the customers was upon the plaintiff company and not upon the manufacturer.

In my opinion, there was never any indication on the part of the manufacturer and the plaintiff that each individual microscope should cost more than $13,500. The arrangements for service charges covering installation and maintenance were really items incurred after the merchandise had become part of the commerce of the United States.

Accordingly, I make the following findings of fact:

1. That the merchandise involved in this appeal to reappraisement consists of one model HU–11 electronic microscope, exported from Japan on or about November 25, 1961.

2. That the sum of $3,500 was paid by the importer to the exporter for technical services rendered by trained personnel in the United States of America at the request of the importer in connection with the installation of the microscope, the training of operators, maintenance of the machine, and other services in the United States after the machine was installed by the importer.

3. That the sum of $3,500 added by the United States appraiser forms no part of the purchase price or export value of the imported microscope.

I conclude as matters of law:

1. That the export value of the microscope in question, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, is the proper basis for appraisement herein.

2. That the correct export value of said merchandise, as defined by said section 402(b), is the appraised value, less the sum of $3,500.

Judgment will be entered accordingly.