(R.D. 11293)

DAVIES, TURNER & CO. *v.* UNITED STATES

Entry No. Temp. Imp. 519.

(Decided April 26, 1967)

*Allerton deC. Tompkins* for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

FORD, Judge: Plaintiff herein seeks a reappraisement of a shipment of parts and materials of a "Wire Mesh Band Oven 5' x 36' " used for baking bagels. The merchandise was exported from Israel and entered at the port of Philadelphia, Pa.

The components comprising the importation were appraised at $19,300 packed, less ocean freight of $3,052, on the basis of export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

Counsel for plaintiff agrees that export value as defined in section 402(b), as amended, *supra*, is the proper basis for appraisement. However, it is his contention that said value is the f.o.b. price as invoiced and entered which sum is $10,000, less ocean freight of $3,052 or $6,948 f.o.b. Israel.

Section 402(b), as amended, *supra*, provides as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country

of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

This case was submitted in open court upon an affidavit from the exporter to which a number of bills and vouchers, plus a contract, were attached. Said affidavit was received in evidence as plaintiff's exhibit 1.

Basically the affidavit of the manager of the exporter states that he negotiated the sale of the involved merchandise which was the subject of a contract dated October 29, 1958, copy of which was attached. Said contract was between the exporter and Gold Medal Baking Co. of Philadelphia. The contract provided for a sum of not more than $18,700 c.i.f. Philadelphia, plus $600 for other expenses. Further provisions of the contract required the seller, together with an employee of the buyer, to erect, assemble, and install the oven and also provided that the buyer shall supply all electrical, plumbing, and stack work necessary to put the oven in operation.

The affiant further states as follows:

(4) The determination of the contract price was predicated upon the following factors:

1. Price of oven installed and ready for use_____ $18,700.00
2. Additional travel expenses_____ 600.00

Total installed price $19,300.00

Deductions:

3. Costs of travel, U.S. duty, U.S. parts,
 labor and expenses related to erection___ $7,600.00
4. Commission to U.S. agent_____ 1,700.00

$9,300.00 9,300.00

Price of imported parts C.I.F. Phila_____ $10,000.00

Attached to the affidavit are 65 receipts which, according to the affiant, amount to $9,300 and cover materials purchased in the United States, labor, and costs directly connected with the importation and erection of the oven. An explanation of the receipts is attached to said exhibit and designated as exhibit C. The affidavit further states that the sum of $1,700 paid to Quaker City Products Co. represents a commission for the sale of its product to Gold Medal Baking Co.

The affiant then makes the following statement:

(8) Since 1959 our Firm did not sell similar ovens to the U.S.A. nor any other foreign country. But, in Israel our Firm has sold five similar ovens, each for the price of I£ 30,000.00 ($10,000.00) complete, including installation, motors, insulation, etc.

The domestic price of $10,000.00 consists of:

| | | |
|---|---|---|
| Basically materials | (as exported to Gold Medal Baking Co. but without export packing) __ | $6, 700. 00 |
| Additional materials | (similar to Nos. 4–6 & 8–64 on Exhibit "B" attached) _____ | 2, 700. 00 |
| Salary of a second class mechanic | (not first class as sent to Gold Medal) _____ | 600. 00 |
| | Total: | $10, 000. 00 |

i.e.: I£ 30,000.00

(9) Such ovens are built to order and specification, but they contain the same basic components adjusted to meet a customer's requirements. During the year 1959 and until today Gershon Paglin & Sons Ltd. was ready and is willing to sell such oven parts to other parties at a F.A.S. Israel port price of $6,700.00 or a C.I.F. U.S.A. port price of $10,000.00.

Based upon this record, plaintiff contends that the appraised value of $19,300 represents the installed price and that the sum of $9,300 for material and installation as well as the ocean freight does not properly form part of the dutiable value. This contention is based upon the well recognized principle of law that for export value any costs, charges, or expenses incurred subsequent to the time that the imported merchandise is in the principal market in condition, packed ready for shipment to the United States, are not part of export value. *United States* v. *Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 553.

Defendant directs my attention to the case of *Erb & Gray Scientific Inc.* v. *United States*, 53 CCPA 46, C.A.D. 875, wherein the court had before it the question of the proper dutiable value of certain electron microscopes. In that case, the microscopes were appraised at $17,000 which included the sum of $3,500 designated as "New York office service and operation fee." The record discloses that the microscopes involved therein were highly technical and required trained technicians to install and maintain them. The salaries and expenses of these technicians were paid by the importer. However, the exporter maintained an office in New York to supervise the technicians and to assist them. The overhead of the New York office apparently became too great for the exporter and the exporter proposed to increase the price of the microscopes but, in lieu thereof, it was agreed that an additional sum of $3,500 would be paid to maintain the New York office.

The court of appeals therein held the sum of $3,500 to be part of the dutiable value since the importer was required to pay the "fee" and it was not optional as it was in the case of *Brauner & Co.* v. *United States*, 44 Cust. Ct. 661, Reap. Dec. 9673.

The court then made the following comment:

The basic principle, statutorily prescribed, is that the export value of merchandise is based on the price at which such merchandise is

either sold, or in the absence of sales offered for sale, at the time of exportation of the merchandise being valued. If, then, as urged by the appellant, the instant $3,500 sum which the importer was contractually obligated to remit in connection with the importation of the instant microscope should have been excluded from the export value of that microscope on the authority of the so-called inland freight cases, including *Mottola* v. *United States*, 46 CCPA 17, C.A.D. 689, and *United States* v. *Paul A. Straub & Co.*, 41 CCPA 209, C.A.D. 553, the record must show that on or about November 25, 1961 the HU–11 Hitachi electron microscope was sold or, in the absence of sales, offered for sale for exportation to the United States at a price which did not include the $3,500 sum.

Based upon the record as made therein, the court of appeals concluded that the $3,500 "fee constituted in essence a disguised increase in the price * * *."

In the case at bar, the manner in which the price was determined was clearly set forth in the affidavit which stands unrebutted. The affidavit establishes that, while no other ovens were sold to the United States or other countries, the exporter was ready and willing to sell such oven parts at a f.a.s. Israel port price of $6,700 or a c.i.f. price of $10,000. The exporter has, in fact, sold five similar ovens in the home market at a price of $10,000, each completely installed. This price was broken down as follows: The price of the materials for the oven $6,700; the additional parts similar to those purchased in the United States for this importation at $2,700; $600 for a second class mechanic.

There appears to be no dispute that the importation involved herein consists of parts of an oven not including motors, oil burners, driving units, and insulation material which was subsequently purchased in the United States to make the oven functional. Such a situation is not controlled by the *Erb & Gray* case, *supra*, since the purchase of additional material in the United States is not a "disguised increase in price" as in that case. Obviously, the cost of merchandise purchased in the United States for installation into an article imported does not form part of the dutiable value.

The question of the labor to install said ovens and the expenses of said labor, however, is a different matter and may be part of the dutiable value if not optional under the principle enunciated in the case of *Brauner & Co.*, *supra*. If the installation was optional, such charge, under said principle, would not form part of the value. The record herein establishes not only the breakdown of the price but the willingness to sell at installed price, f.o.b. price, or f.a.s. price and, accordingly, such labor and expenses are optional and not part of the dutiable value.

The sum of $1,700 to Quaker City Products Co. which is designated as a commission is, however, in my opinion, dutiable. It is basic in this

field of jurisprudence that a buying commission is not part of the dutiable value whereas a selling commission is part of the dutiable value. The affidavit, which constitutes the sole record herein, fails to establish what such commission represents and the duties of the commissionaire.

I, therefore, find as matters of fact:

1. The merchandise covered by this appeal for a reappraisement consists of parts and material of a wire mesh band oven.

2. The final list promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, does not provide for the imported merchandise.

3. Appraisement was made on the basis of export value of such merchandise as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

4. The value placed upon such merchandise by the appraiser was $19,300, less ocean freight of $3,052.

5. The appraised value is equivalent to the installed price including material purchased in the United States and labor for installation.

6. The labor for the installation was optional.

7. The record fails to establish just what the item designated as commission in the sum of $1,700 to Quaker City Products represents.

I, therefore, conclude that:

1. Export value as defined in section 402(b), Tariff Act of 1930, as amended, *supra*, is the proper basis for the determination of value of the merchandise involved herein.

2. Such value is the invoiced value, $10,000, plus the sum of $1,700 referred to in findings of fact number 7, less ocean freight in the sum of $3,052.

Judgment will be entered accordingly.