**UNITED STATES**

v.

**DAVIES, TURNER & CO.**

**Reappraisement R60/18121.**

United States Customs Court.

Aug. 8, 1969.

William D. Ruckelshaus, Asst. Atty. Gen. (Sheila N. Ziff, New York City, trial attorney), for appellant.

Allerton deC. Tompkins, New York City, for appellee.

Before RICHARDSON and LANDIS, Judges.

LANDIS, Judge:

This case comes to us on application of defendant below to review the valuation decision and judgment in favor of plaintiff below in Davies, Turner & Co. v. United States, 58 Cust.Ct. 689, R.D. 11293 (1967).

The valuation merchandise is a wire mesh band oven. Parts and materials for the oven were exported from Israel on July 31, 1959. A consumption entry for the oven was filed at Philadelphia, Pa., on September 3, 1959.

The crux of the dispute is the amount of export value (as defined in section 402, Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165) proper for the oven. Export value, conceded on trial to be the proper basis for valuation, is defined in section 402(b), as amended, *supra*, as follows:

> (b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in con-

dition, packed ready for shipment to the United States.

The appraiser determined that the oven had a statutory export value of $19,300, packed, less ocean freight of $3,052. The trial judge concluded that, as a matter of law, the export value was "the invoiced value, $10,000, plus the sum of $1,700 * * *, less ocean freight in the sum of $3,052" (paragraph 2 of conclusions in decision below). The application of appellant (defendant below) lists a number of counts which in sum allege that there is no substantial competent evidence to support the amount of export value found by the trial judge. They are grounds for review. 28 U.S.C. § 2636.

An affidvait of Amihai Paglin, manager of Gershon Paglin & Sons, Ltd., Tel Aviv, Israel, manufacturers of baking machines and ovens, is the only evidence of record. (Exhibit 1.) Mr. Paglin's affidavit sworn to before the American Vice Consul at Tel Aviv on March 31, 1966, states that he negotiated the sale of the imported oven. Attached to the affidavit is the written agreement of sale, dated October 29, 1958, wherein Gershon Paglin & Sons, Ltd., agreed to sell and Gold Medal Baking Company, Inc., agreed to buy the imported oven (attached exhibit A); a number or receipts which purport to support a schedule "LIST OF EXPENSES, LABOUR & VALUE OF MATERIALS SPENT ON ERECTION OF GOLD MEDAL OVEN" (attached exhibit B), and an "EXPLANATION OF CONTENTS OF RECEIPTS UNDER [attached] EXHIBIT 'B'" (attached exhibit C).

Appellee (plaintiff below), a customs broker, serviced customs entry of the oven.

The purchase agreement spells out quite clearly what was sold, the price, and other terms of sale. Under terms pertinent here, the seller agreed to sell and the buyer agreed to buy a "Paglin Wire Band Mesh Oven, equipped with 5 foot wide endless wire mesh belt with a

baking area of 5 feet by 36 feet steel construction, oil fired, with recirculation heat and electronic controlled" (paragraph 1). The price the buyer agreed to pay was not more than the sum of $18,700 c. i. f. Philadelphia and an additional sum of $600 for other expenses (paragraph 2). Terms of payment provided that the buyer pay $1,000 on signing of the agreement, $5,700 cash after 30 days demonstration, $1,000 for 12 consecutive months bearing 6 percent interest on the unpaid balance, and deliver a promissory note for the installment payments 30 days after the oven was delivered and erected (paragraph 3). The seller agreed that, with an employee of the buyer it would erect, assemble, and install the oven (paragraph 4), on or before April 15, 1959, otherwise the agreement to be considered void (paragraph 7). The buyer further agreed to supply, at its own expense, all electrical, plumbing, and stack work necessary to make the oven operable (paragraph 4), and insure the oven against fire and other losses for not less than $20,000 in a policy showing the seller's interest (paragraph 6).

Mr. Paglin's affidavit confirms the fact that the oven was sold "at an elected and installed price of $19,300" but says that price was predicated upon factors as follows:

Deductions:

| | |
|---|---|
| Costs of travel, U.S. duty, U.S. parts, labor and expenses related to erection | $7,600.00 |
| Commission to U.S. agent | 1,700.00 |
| | $9,300.00 |

The affidavit thus arrives at a "Price of imported parts C.I.F. Phila." of $10,-000 ($19,300 less $9,300). Exhibit B of the affidavit is a composite list of the alleged $9,300 expenses and the seller's receipts for those expenses. Exhibit C of the affidavit is in further explanation of the receipts.

The affidavit next proceeds to recite that, since 1959, the manufacturer had sold no similar ovens for export anywhere, but had sold five similar ovens in Israel for $10,000, completely installed and ready to operate, and is ready and willing to sell such oven parts to other parties for export at "C.I.F. U.S.A. port price of $10,000.00".

The above evidence persuaded the trial judge that, as a matter of fact, the labor for installation was optional (finding 6). He concluded, as stated earlier, that the proper amount of export value was $10,-000 plus $1,700 less $3,052 for ocean freight. We are of opinion that the record fails to support the adjudged value and reverse.

To begin with the appraised price of $19,300, packed, less ocean freight is presumed to be the correct price, at the time of exportation to the United States, on export value basis. 28 U.S.C. § 2633. Except for the amount of ocean freight which is not in issue, the appraised price is not separable or claimed to be separable. See, United States v. Chadwick-Miller Importers, Inc., et al., 54 CCPA 93, C.A.D. 914 (1967). Thus, the appraisement does not carry in it a separable issue as to whether the claimed cost items in the amount of $7,600, and commission in the amount of $1,700, were properly included as appellee tries to suggest. We do not know what the appraisement included. All we know is that the merchandise was appraised at a price which presumptively meets the statutory definition. The basic issue raised by the appraisement is price on export value basis. On that price issue, plaintiff below had to establish all the statutory elements of an export price, different from the appraised export price, as defined in section 402 (b), supra. Kobe Import Co. v. United States, 42 CCPA 194, C.A.D. 593 (1955).

The basic principle, statutorily prescribed, is that the export value of merchandise is based on the price at which such merchandise is either sold, or in the absence of sales offered for

sale, at the time of exportation of the merchandise being valued. \* \* \* [Erb & Gray Scientific, Inc. v. United States, 53 CCPA 46, 51, C.A.D. 875 (1966).]

■■ We are unable to find in the record any probative evidence of an export price different from the appraised export price, at which the oven was sold or offered for sale at the time of exportation. What the record evidence does, in effect, is explain that the agreed purchase price of $19,300 for the oven installed and ready for use, was predicated on what the affidavit calls certain deductible costs totalling $9,300, or a "Price of imported parts C.I.F. Phila." of $10,000 ($19,300 less $9,300). But assuming the rather superficial explanation of factors upon which the purchase price seems to have been predicated is a correct statement, it does not, *ipso facto*, prove the price at which the oven was freely sold, or in the absence of sales offered for sale, to all purchasers at the time of exportation. There is not a scintilla of evidence that the appraised export price included the deductible factors in the alleged amounts, and the circumstance that the appraised price is the equivalent of the agreed purchase price does not make it so. H. M. Young Associates, Inc. v. United States, 60 Cust.Ct. 842, R.D. 11517 (1968) (rehearing pending). Cost items may be relevant with respect to the claimed statutory export value. However, proof of cost items does not, in and of itself, competently prove the claimed export value within the framework of an appraisement, not shown to be separable, or an export value, as defined in section 402(b), *supra*.

■ There are additional reasons why we consider this is a doubtful record upon which to affirm the judgment below. The 1958 purchase agreement recites that the "[b]uyer agrees to supply all the electrical, plumbing, and stack work necessary to put the product in operation at buyers expense" (paragraph 4). Affiant, without further explanation, and although the agreement provides otherwise, asks us to accept his statement that expenses and parts purchased in the United States to put the oven in operation (i. e. erection) were included in the agreed purchase price for a fully installed oven and should be deducted. Nowhere do we find that the cost of labor for installation was optional as it must be to be excluded from price. Brauner & Co. v. United States, 44 Cust. Ct. 661, Reap.Dec. 9673 (1960). Affiant's additional statement that it sold five similar ovens in Israel for $10,000 installed, is not relevant of a price to all purchasers for export to the United States, and, a willingness to sell oven parts to other parties at "C.I.F. U.S.A. port price of $10,000" is not evidence of a market price. Delmonico International Corp. v. United States, 52 Cust.Ct. 656, A.R.D. 176 (1964).

■ We find as facts:

1. That the merchandise of this appeal for reappraisement is a wire mesh band oven exported from Israel on July 31, 1959.

2. That the merchandise was examined on March 10, 1960 at the premises of the Gold Medal Baking Co., Philadelphia, Pa., and appraisement completed on August 2, 1960.

3. That the merchandise was appraised on basis of export value as defined in section 402(b), Tariff Act of 1930, as amended, at $19,300, packed, less ocean freight.

4. That there is no competent proof of an export value, as defined in section 402(b), Tariff Act of 1930, as amended, different from the appraised value.

We conclude as a matter of law:

1. That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended, is the proper basis of value for the imported oven.

2. That the export value of the oven is the appraised value.

Judgment will enter accordingly.

RICHARDSON, J., concurs.